IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LECH NADBORSKI, Individually and on behalf of all others similarly situated, | )<br>)<br>) |
| PLAINTIFF, | ) |
| v. | )<br>) Case No. |
| THE RECEIVABLE MANAGEMENT SERVICES CORPORATION, | )<br>)<br>)<br>) |
| DEFENDANT. | ) JURY TRIAL DEMANDED |

## CLASS COMPLAINT

Plaintiff, Lech Nadborski, individually and on behalf of all other similarly situated, files this Class Complaint under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), for a finding that Defendant's debt collection actions violated the FDCPA, and to recover damages for Defendant's violations of the FDCPA, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because the acts and transactions occurred here, and Defendant transacts substantial business here.

## STANDING

3. Plaintiff and the putative class have suffered an injury in fact that is traceable to Defendant's conduct and is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff and the putative class suffered a personalized and concrete injury in the form of, among other things, false communications to Plaintiff, and the putative

1

class, regarding their consumer rights under the FDCPA, and Defendant's failure to provide Plaintiff and the putative class with truthful and accurate disclosures required under the FDCPA.

5. Defendant's actions have thus caused Plaintiffs to suffer an injury, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiff, Lech Nadborski ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect a delinquent consumer debt allegedly owed to Vonage for telephone services allegedly used by Plaintiff for personal, family and household use. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

7. Defendant, The Receivable Management Services Corporation ("RMS"), is a Delaware based corporation with its principal place of business at 240 Emery Street, Bethlehem, Pennsylvania 18015.

8. RMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. RMS acts as a debt collector as defined by § 1692a(6) of the FDCPA because it uses the instrumentalities of interstate commerce including the telephone and/or the mails in its business, the principal purpose of which is the collection of defaulted consumer debts.

10. RMS also acts as a debt collector as defined by § 1692a(6) of the FDCPA as it regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

## FACTUAL ALLEGATIONS

11. Defendant has alleged that Plaintiff incurred a debt due to an allegedly defaulted Vonage account, that was used for personal, family or household telephone services ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

12. Defendant has alleged that Plaintiff failed to pay the full balance and that the account later entered default.

13. Vonage subsequently transferred or assigned the alleged debt to RMS for collection from Plaintiff.

14. On August 8, 2017, RMS mailed Plaintiff a collection letter. (Exhibit A, Collection Letter).

15. The letter contained the alleged balance, a claim number and a reference number.

16. The letter was a communication as that term is defined at § 1692a(2) in the FDCPA.

17. Upon information and belief, the letter was an initial form letter sent by RMS to numerous consumers throughout the state of Illinois.

18. On the back of the letter, RMS included the validation notice required by 15 U.S.C. § 1692g, and stated:

**IMPORTANT INFORMATION**

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion**

3

**thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice RMS will provide you with the name and address of the original creditor, if different from the current creditor.**

**(Exhibit A, August 8, 2017, Collection Letter)**

19. On the front of the letter, RMS included the additional paragraph:

    **If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution. Should you receive this letter after a discussion with our representative, we thank you for your cooperation.**

20. The statement by RMS that the consumer "will be receiving a call to bring this matter to a resolution" is inconsistent with the validation notice located on the back of the letter.

21. Additionally, the letter states

    **IMPORTANT: REFER TO CLAIM NUMBER IN ALL COMMUNICATIONS**

22. 15 U.S.C. § 1692g of the FDCPA states in relevant part:

    **(a) Notice of debt;**
    **Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

    **(1) the amount of the debt;**
    **(2) the name of the creditor to whom the debt is owed;**
    **(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
    **(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the**

4

>   **consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
>
>   **(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

23. The letter to Plaintiff would cause a consumer to believe that RMS would call them, and on the call, they could resolve any issues with the account, including a dispute or request for verification of the debt. However, this is inconsistent with the FDCPA, since a consumer can only obtain verification and validation of the alleged debt by notifying the debt collector in writing within 30 days of receiving the collection letter.

24. This additional information from RMS is likely to cause a consumer to wait until RMS calls to dispute the debt, which may never actually occur, since RMS is under no obligation to call a consumer. Additionally, even if RMS called, it is not guaranteed it would actually reach the consumer.

25. This language also overshadows the consumer's rights under § 1692g, since it states that RMS would call to resolve the account, even if the consumer sends a written request for verification. Once the written request for verification is made, the debt collector must stop collection attempts until it sends verification to the consumer.

26. RMS's demand that the consumer include the "claim number" in all communications also adds an additional, and unnecessary, requirement to § 1692g. There is nothing in that section that allows a debt collector to require a "claim number" in order to process a consumer's dispute.

27. In fact, there is nothing in § 1692g that requires any additional information, such as a "reference number", in order to request verification of a debt.

5

28. RMS's false assertions here would cause a consumer to believe that if they were not able to include a reference number (for example, the consumer discarded the letter), they would not be able to requires verification of the debt.

29. 15 U.S.C. § 1692e of the FDCPA states in relevant part:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken…**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

30. Defendant violated §§ 1692e and 1692e(5) when it claimed that it would call Plaintiff "to bring this matter to a resolution", even if Plaintiff requested verification of the debt or disputed it within 30 days of receipt of the letter.

31. Defendant violated §§ 1692e and 1692e(10) when it claimed that it would call Plaintiff "to bring this matter to a resolution", which would cause a consumer to believe that he did not have to dispute the alleged debt or request verification in writing, because Defendant would call to resolve the matter.

32. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

**COUNT I—FAIR DEBT COLLECTION PRACTICES ACT- CLASS CLAIM**

33. Plaintiff realleges the previous paragraphs as if set forth fully in this count.

34. The language in RMS's letter is false, misleading and overshadows the validation notice on the back-side of the letter.

35. Defendant violated 15 U.S.C. § 1692g when it overshadowed the validation notice, by telling the consumer that an RMS representative would call "to bring this matter to a resolution", which could lull the consumer into believing that they would not need to proactively dispute the alleged debt within the 30-day time period proscribed in the FDCPA, thus losing valuable rights.

36. Defendant also violated 15 U.S.C. § 1692g when it stated that an RMS representative would call "to bring this matter to a resolution", when it would not have the right to do so if the consumer mailed RMS a verification request, since RMS could not continue collection attempts until it sent verification of the debt to the consumer.

37. Defendant violated 15 U.S.C. § 1692g when it demanded that Plaintiff include RMS's "claim number" in all communications, when that is not required in order to dispute an alleged debt.

38. Defendant violated §§ 1692e and 1692e(5) when it claimed that it would call Plaintiff "to bring this matter to a resolution", even if Plaintiff requested verification of the debt or disputed it within 30 days of receipt of the letter.

39. Defendant violated §§ 1692e and 1692e(10) when it claimed that it would call Plaintiff "to bring this matter to a resolution", which would cause a consumer to believe that he did not have to dispute the alleged debt or request verification in writing, because Defendant would call to resolve the matter.

## CLASS ALLEGATIONS

40. Plaintiff brings this claim on behalf of a Class.

41. Plaintiff's proposed class consists of (a) all individuals with Illinois addresses (b) who were sent a collection letter, by or on behalf of RMS, in the form represented by Exhibit A of this Class Complaint (c) to collect a consumer debt (d) that was sent from July 31, 2017, to 21 days after the filing of this complaint (e) that was not returned as undeliverable by the postal service.

42. Defendant regularly engages in debt collection, including attempting to collect debt via the mails, in their regular course of business.

43. The Class consists of more than 35 persons from whom Defendant attempted to collect a debt using the language that Plaintiff alleges violates the FDCPA.

44. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

45. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

46. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the

members of the Class, because the Defendants conduct was perpetrated on all members of the Class and will be established by common proof. Moreover, Plaintiff has retained counsel experienced in class action litigation including class actions brought under the FDCPA.

47. Because of the Defendant's violations of the FDCPA, Plaintiff and the class are entitled to an award of statutory damages, costs and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lech Nadborski, individually and on behalf of all others similarly situated, respectfully requests that the Court:

    A. Certify this action as a class action;

    B. Appoint Plaintiff as Class Representative of the Class, and his attorneys as Class Counsel;

    C. Enter judgment in favor of Plaintiff and against Defendant, for statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and,

    D. Grant such further relief as deemed just.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By: /s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

Bryan Paul Thompson
Robert W. Harrer
Chicago Consumer Law Center, P.C.
111 West Washington Street, Suite 1360
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: /s/ *Bryan Paul Thompson*

One of Plaintiff's Attorneys